# In the United States Court of Federal Claims

NO. 13-269C
(Filed: January 15, 2020)

**ARNOLD R. GALLOWAY**                                     **Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA**                          **Defendant.**

*Arnold R. Galloway*, La Mesa, CA, *pro se* Plaintiff.

*Anthony F. Schiavetti*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, and *Veronica N. Onyema*, Commercial Litigation Branch, Civil Division, Department of Justice, for Defendant. *Kathleen A. O'Neill*, Associate Counsel, Naval Sea Systems Command, Washington, D.C., of counsel for Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGEMENT IN PART

TAPP, Judge.

    Plaintiff, Arnold Galloway ("Galloway"), seeks payment of overtime wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a). (Transfer Compl. at 4, ECF No. 5). The United States moves for summary judgment. (Def.'s Mot. for Summ. J. (Def.'s Mot.) at 11–12, ECF No. 33). There being no genuine issue of material fact, the United States' motion is **GRANTED IN PART**.

### Background

    The U.S. Navy originally hired Galloway in May 1991, as a Technician III in the Fleet Anti-Submarine Warfare Training Center (FASW) in San Diego, California. (Transfer Compl. at ¶ 8, ECF No. 5).[1] In the years following his initial employment, Galloway received additional promotions. In April 2002, the Navy hired Galloway as a full-time employee with an appointment at GS grade 9, step 7. (Def.'s Mot App'x at A40–41, ECF No. 33-1). By January 2008, the Navy had promoted Galloway to an Equipment Specialist, GS grade 11, step 5. (*Id*. at A11). That same month Mr. Galloway was promoted to "Acting N5 Department Head." (Transfer Compl. at ¶¶ 9–11); *see also* (Def.'s Mot. App'x at A46).

    While working as Acting Department Head, Galloway applied for the permanent department head position, but was never promoted to that position. (Transfer Compl. at ¶ 14; *see*

---

[1] The Court notes that the parties are in agreement with the relevant dates, but experienced apparent difficulties with accurate citation to the appropriate military records. Herein, the Court has attempted to correct these mistakes.

*also* Def.'s Mot. App'x at A212). In April 2009, Galloway's supervisor removed him as Acting Department Head and restored him to his position as Equipment Specialist. (Def.'s Mot App'x at A46, A212). Galloway learned "around August 21, 2009" that a permanent N5 Department Head had been named. (*Id.* at A46).

On September 1, 2009, Galloway filed an equal employment opportunity (EEO) complaint, alleging that he was subjected to unlawful discrimination constituting a hostile work environment on the bases of race and religion (*Id.* at A45, A65, A67). Galloway requested compensation for 600 hours of overtime worked, transfer or reassignment out of his current office, and EEO training for all employees in his office involved in advancement and promotion. (*Id.* at A45–46, A65, A72–73).[2] In response to Galloway's EEO complaint, the Department of Defense conducted an EEO investigation into his claims. (Def.'s Mot. App'x at A42–A405).

At the outset of the EEO investigation, Galloway told an EEO counselor on September 23, 2009 that he should be compensated for his overtime. (*Id.* at A120–25). Galloway estimated he worked an average of two extra hours per day while he was Acting Department Head, for a total of approximately 600 hours. (*Id.* at A123). Galloway argued that overtime pay could be calculated in one of three ways: (1) based on his pay while he was handling the responsibilities of the N5 Department Head position; (2) based on the pay of the prior N5 Department Head; or (3) based on the compensation of the current N5 Department Head. (*Id.*).

Importantly, Galloway and other employees related to the EEO investigation submitted declarations. In his first statement prepared on July 2, 2010, Galloway claimed he had worked 325 to 350 hours of overtime. (*Id.* at A303). This number differs dramatically from the original estimate provided at the outset of the EEO investigation. (*See id.* at A46).

In his July 2, 2010 declaration to the EEO, Galloway alleged he was denied weekend overtime because his then-supervisor would have been required to be present to supervise. (*Id.* at A304). Thus, Galloway was put on notice that all overtime would have to be conducted during the work week. (*See id.*).

Galloway did not produce timekeeping records to support his initial claim, nor the subsequent claim he made to the EEO. FASW utilized a timekeeping program titled the "Standard Labor Date Collection & Distribution Application" (SLDCADA). (*Id.* at A408, A413). Galloway acknowledged that "until the last command IG inspection," he never used this program. (*Id.* at A304). According to Galloway, that IG inspection mandated that all civilian employees utilize the SLDCADA website. (*Id.*).

When asked if he brought up the issue of his unpaid overtime with supervisors, Galloway stated that he discussed the issue with Captain Eric Moss and Commander Michael McCallum in

---

[2] In his Complaint, Galloway claims compensation for 700 hours of overtime. (Transfer Compl. ¶ 17, ECF No. 5).

an April 24, 2009 meeting. (*Id.*). According to Galloway, Commander McCallum remarked "it's all about money," but did not elaborate on this ambiguous comment. (*Id.*).[3]

In a second declaration to the EEO on July 14, 2010, Galloway again claimed that he worked 600 hours of overtime from January 2008 to April 2009. (*Id.* at A277). This estimate was consistent with his initial statement to the EEO, but inconsistent with both his first EEO declaration and his Complaint.

Galloway also stated that a supervisor, Commander Michael McCallum, approved Monday through Friday overtime because he would be present to supervise. (*Id.*). This differs from Galloway's July 2 statement in which Galloway mentioned overtime approval related to the 2008 computer virus but did not disclose any specific weekday overtime. (*Compare id.* at A304 *with id.* at A277).

Captain Moss, the Commanding Officer ("CO") of the FASW Training Center during the majority of time Galloway was Acting Department Head, disputed Galloway's overtime claims. (*Id.* at A333). In his EEO declaration, Captain Moss stated that up until Galloway asked for reassignment, "he never requested any overtime, never informed [Cpt. Moss] that he worked any overtime, nor signed a time card indicating that he had been burdened to work overtime while in the performance of duties as acting N5." (*Id.*). Captain Moss also stated that despite Galloway's obligation to report overtime, Galloway "didn't tell his supervisor or me [that] he was working overtime . . .." (*Id.*).

Richard Frazer, Galloway's co-worker and eventual replacement as N5 Department Head, submitted a declaration as part of the EEO investigation. (*Id.* at A354–58). During Galloway's tenure as Acting Department Head, Frazer was a subordinate to Mr. Galloway. (*Id.* at A355). Frazer stated that during this, Frazer asked why Galloway "was putting in so many hours while he was Acting DH, because he was not getting paid [for the overtime work]." (*Id.* at A357). Frazer stated that Galloway responded that "the work had to get done." (*Id.*). Frazier also stated that Galloway took work home on the weekends though no one had directed him to do so and Galloway "worked late almost every day." (*Id.* at A357–58). Frazier contends he suggested Galloway request compensatory time, but Galloway did not do so. (*Id.* at A358).

Frazier stated that while serving as Acting Department Head following Galloway's tenure, "no one directed me to take work home" but "it was so much work that I had to work over on numerous occasions." (*Id.* at A357). When Frazer told Commander McCallum that he was working late, McCallum told him to keep track of his overtime and request compensatory time later. (*Id.*).

Kay Collins, the Administrative Officer at FASW during the time that Galloway was Acting Department Head, also submitted an EEO declaration. (*Id.* at A337–342). Collins stated that to receive compensation for overtime, "management officials have to pre-authorize the

---

[3] Galloway acknowledged that Commander McCallum had previously approved his overtime during a period of computer-system virus scanning in 2008 and that he received compensatory time for his work. (Def.'s Mot. App'x at A304).

overtime and an employee has to request to work the overtime."[4] (*Id.* at A341). Collins stated that to her knowledge, Galloway "was not authorized nor did he request any overtime." (*Id.*).

Galloway produced a "time clock spreadsheet" prepared by him in anticipation of litigation listing "the actual or estimated hours he worked over time, the reason why he worked overtime, and the FASW supervisors who knew or should have known he worked overtime." (Def.'s Mot. at 10–11; Def.'s Mot. App'x at A450–56, A458–768). Spreadsheet entries do not include corresponding dates, and do not always correlate to timekeeping records produced by Galloway in the EEO investigation. (*Compare* Def.'s Mot. App'x at A458–768 *with id.* at A79–90).[5]

On March 18, 2011, Galloway filed a Complaint in the United States District Court for the Southern District of California, alleging: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; (2) discrimination in violation of FEHA pursuant to California Government Code § 12940(a); (3) failure to prevent discrimination and retaliation pursuant to California Government Code § 12940(k); (4) failure to pay overtime wages (in violation of the FLSA); and (5) violations of the California Labor Code. (S.D. Cal. Complaint at ¶¶ 29–60, ECF No. 1-3).

The Southern District of California granted the Defendant's Motion for Summary Judgment, finding that the first cause of action failed on the merits and the second, third, and fifth causes of action failed because the United States had not waived its sovereign immunity with respect to the cited statutes. (S.D. Cal. Order, 11-cv-0547 at 9–10, ECF No. 1-1). The Southern District found it lacked jurisdiction over the fourth claim and transferred it to the U.S. Court of Federal Claims. (*Id.* at 10).

In his Transfer Complaint, filed May 15, 2013, Galloway alleged that he worked 700 hours of overtime for which he was not compensated during his sixteen-month tenure as Acting N5 Department Head. (Transfer Compl. at ¶¶ 17–22, ECF No. 5). He seeks damages for unpaid overtime in the amount of $41,219.00, costs of pre- and post-judgment interest, and, pursuant to

---

[4] The FASW's timekeeping policy provides in relevant part:

> 8. <u>Overtime</u>. Overtime (including compensatory time or holiday worked) shall be requested by the employee in advance, and approved by the supervisor, via SLDCADA, and shall include dates, number and type of hours to be worked and justification.

(Def.'s Mot. App'x at A413)). The timekeeping policy further provides "Managers are responsible for reviewing overtime and compensatory time usage and will ensure that the use of either is minimized through adequate planning." (*Id.* at A414). The timekeeping policy produced by the government, however, bears the date "18 Sep [20]13," which is more than three years after Galloway vacated the Acting Department Head position. (*See id.* at A407).

[5] Many of the weekend time entries on the EEO investigation spreadsheet are blank, unlike the weekend time entries Galloway produced for this case. The weekend time entries, therefore, in the two documents frequently do not match. Most of the weekday time entries, however, do match.

29 U.S.C. § 216(b), penalties and attorneys' fees. (*Id.* ¶¶ 20–22). Galloway now proceeds *pro se*.[6]

On February 5, 2016, the United States moved for summary judgment, arguing that this case should be dismissed because Galloway: (1) cannot sustain his burden under *Bull v. United States*; (2) has not shown that the hours he alleges to have worked are actually compensable; (3) was an exempt employee between January 2008 and April 2009; (4) is not entitled to liquidated damage because the government acted in good faith; and (5) damages must be limited to the two years before Galloway filed his March 18, 2011, Complaint in U.S. District Court for the Southern District of California. (Def.'s Mot. at 11–22).

Following telephonic oral argument and in response to the United States' motion, Galloway filed supplemental documents for the record. (Supp. Doc., ECF No 42). Among the documents filed were emails with timestamps showing he sent or received emails after his scheduled shift had ended. (*Id.* at 65–116). Against this factual backdrop, the Court applies the familiar standard for summary judgement.

### Analysis

The Court recognizes Galloway is now proceeding *pro se*. When proceeding *pro se*, litigants are entitled to some measure of leniency with respect to the formalities of their pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*). This Court follows the Supreme Court in holding *pro se* plaintiffs to a less stringent standard, but plaintiffs are not relieved from establishing the substance of their claims. *See Hale v. United States*, 143 Fed. Cl. 180, 187 (2019).

Summary judgment shall be granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987); *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 743 (2005). Material facts are those "that might affect the outcome of the suit under governing law." *Liberty Lobby*, 477 U.S. at 248. A dispute over facts is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

The moving party may base its motion for summary judgment on the "absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In response, the non-moving party is not obliged to "produce evidence in a form that would be admissible at trial" to demonstrate the existence of a genuine issue of material fact. *Id.* at 324. If the non-moving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted); *Veit & Co. v.*

---

[6] On November 13, 2014 the Court granted a motion filed by Mr. Daniel DiRe to withdraw as counsel for Galloway and recognize Galloway as a Plaintiff Pro Se. (Order, ECF No. 21).

*United States*, 56 Fed. Cl. 30, 34 (2003). "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citation omitted); *see also Veit*, 56 Fed. Cl. at 34. In FLSA cases, the plaintiff bears the burden of proof and persuasion. *Abbey v. United States*, 82 Fed. Cl. 722, 727 (2008) ("To prevail on a FLSA claim for an overtime activity suffered or permitted to be performed, plaintiffs must carry their burden of proof" on all elements of the claim.)

The FLSA requires payment for overtime when the United States employs a non-exempt worker in excess of a forty (40) hour workweek. 29 U.S.C. § 207(a), 213(a)(1) (defining exemption categories); *see also Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944) (stating purpose of FSLA is to "guarantee[] compensation for all work ... engaged in by [covered] employees[.]"). Entitlement to money damages turns on, among other things, on whether the alleged overtime activities constitute "work," a term left undefined by statute. *See* 29 U.S.C. § 203 (definitions).

The Supreme Court has construed "work" broadly, as activity "controlled by the employer and pursued primarily for the benefit of the employer and his business." *Tennessee Coal*, 321 U.S. at 598; *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (quoting *Tennessee Coal*). This definition of "work" has been refined somewhat by Congress in the Portal Act. Subject to exceptions within the Portal Act, 29 U.S.C. § 251 *et seq.*—none of which are applicable to Galloway's claims—employees must be compensated for activities controlled or required by the employer relating to the principal purpose for which they are employed.

Compensable work under the FLSA includes only work that is "suffered or permitted." 29 U.S.C. § 203(g) (defining "employ" for purposes of the FSLA to mean to "suffer or permit to work."). In order to prevail on a FLSA overtime activity claim, plaintiffs must carry their burden of proof on all elements of the claim.[7] *See Bull v. United States*, 68 Fed. Cl. 212 (2005) *decision clarified*, 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007).

### I. Galloway's Overtime is Not Compensable as "Work"

While Galloway argues that he was required to work in excess of 40 hours per week while serving as the Acting Department Head, he cannot establish that those hours, if performed, constitute "work" for purposes of the FLSA. In *Bull v. United States*, 68 Fed. Cl. 212, 220 (2005), this Court set out a three-part test for compensable work under the FLSA. To succeed on any FLSA claim, a plaintiff "must establish that each activity for which overtime compensation is sought constitutes 'work.'" *Bull*, 68 Fed. Cl. at 220. Demonstrating that an activity is "work" first requires the plaintiff to show that the overtime was "undertaken for the benefit of the employer." *Id.* Second, the plaintiff's working overtime must be known to the employer—either actually or constructively. *Id.* at 223–24. Finally, the employer must either control or require the plaintiff to engage in the overtime work. *Id.* at 224–25. Galloway cannot shoulder any of these three burdens.

---

[7] "It is well established that a claim against the government under the monetary-damages provision of the FLSA ... is within this Court's Tucker Act jurisdiction." *Havrilla v. United States*, 125 Fed. Cl. 454, 462 (2016) (citing *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

6

For the first requirement of the *Bull* "work" test, demonstrating that the overtime activity was undertaken for the benefit of the employer, the United States accurately contends that Galloway "has offered no evidence in discovery regarding the specific work that was performed during the time he purportedly worked overtime." (Def.'s Mot. at 15). In addition, Galloway cannot sufficiently describe the work he performed and therefore cannot prove it was for the benefit of his employer. Thus, according to the United States, Galloway's claim fails to meet the first requirement in *Bull*. (*Id*. at 16).

In his July 14, 2010 EEO declaration, Galloway stated the overtime hours were related to "tasking, meetings and BRAC (base realignment) facilities discrepancies[.]" (Def.;s Motion App'x at A277). Galloway made this same claim in his July 2, 2010 EEO declaration. (*Id*. at A303). Galloway also asserts that there were understaffing issues and that he was overworked. (*See* Plaintiff's Response to Frazier Depo., *Galloway v. United States*, No. 13-269C (Fed. Cl. June 7, 2017), ECF No. 52). He has submitted several email chains, some of which he responded to outside of his normal working hours. (*See* Suppl. Doc., ECF No. 42). Lastly, Frazer stated that when asked why he was working such long hours, Galloway replied, "[T]he work had to get done." (Def.'s Mot. App'x at A357).

Even in a favorable light, this proof fails to satisfy the first requirement of the *Bull* test. To meet the test, the employee's work "must be necessary to the accomplishment of the employee's principal duties to the employer." *Bull*, 68 Fed. Cl. at 223. Galloway's statements and emails do not create a genuine issue of material fact regarding whether the tasks done were "necessary" for Galloway to discharge his "principal" duties to the Navy.

Even assuming that Galloway was very busy while serving as Acting Department Head, the evidence does not show that the tasks he performed were "an integral and indispensable part" of his responsibilities. *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956). Without sufficient evidence detailing his activities, the Court cannot conclude that the activities were necessary to dispense with his responsibilities.[8] *Tenn. Coal*, 321 U.S. at 599 (superseded by statute on other grounds); *see also Liberty Lobby*, 477 U.S. at 249–50 (noting that mere "colorable" or insignificantly probative claims do not preclude summary judgment).

The second requirement of the *Bull* "work" test is that the overtime activity must be known to the employer. 68 Fed. Cl. at 223. Like the first, the second element is also intuitive. If the employee is doing "work'" without notice to the employer, the employer cannot be responsible. *Cf. Doe v. United States*, 47 Fed. Cl. 594, 594–95 (2000) (noting that FLSA allows for payment of overtime compensation so long as employer "knows or has reason to believe" the employee is working while Federal Employees Pay Act requires not only knowledge, but that overtime be "officially ordered or approved . . ..").

---

[8] Likewise, Galloway's generalized assertions about needing to stay overtime, take work home with him, after-hour emails, or generally denying the accuracy of the evidence adduced by the United States are not efficacious. "[M]ere denials or conclusory allegations" are insufficient to establish a genuine question of fact. *SRI Int'l*, 775 F.2d at 1116.

"It is not enough that the preliminary or postliminary activity for which compensation is sought be undertaken for the employer's benefit." *Bull*, 68 Fed. Cl at 223. Rather, "someone with authority to bind the government" must have "actual or constructive knowledge" of the employee undertaking the activity. *Id.* at 224. The United States again accurately notes that "the only evidence that Mr. Galloway has produced in this case consist of unsubstantiated timekeeping records that he prepared which do not explain the nature of the work he performed and similarly fail to explain why his supervisors knew or should have known he was working overtime." (Def.'s Mot. at 16).

Galloway did not seek approval for his overtime hours and only brought up the subject on April 24, 2009. His supervisors would have had no record of his performing uncompensated overtime. (*See* Def.'s Mot. App'x at A333) (highlighting that Galloway's supervisors did not know he was working overtime because he did not seek approval for overtime hours or enter his overtime in SLDCADA).

Finally, the third requirement of the *Bull* test provides that the activity must be controlled or required by the employer. *Bull*, 68 Fed. Cl. at 224–25. Based on the analysis of the first requirement for the *Bull* test above, Galloway does not provide enough evidence to support the inference that the government controlled or required those overtime hours. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692–93 (superseded by statute on other grounds) (finding that the employees proved specific activity performed necessarily and primarily for the employer's benefit).[9]

In short, Galloway's bare assertions that he needed to work overtime are not enough. *SRI Int'l*, 775 F.2d at 1116. Absent evidence that the government required him to take on tasks that required overtime, Galloway cannot satisfactorily show that he was engaging in overtime work. *Bull*, 68 Fed. Cl. at 220–21. The burden is Galloway's, and in this instance, it has not been met. *See McClendon v. United States*, 127 Fed. Cl. 654, 657 (2016) (employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" to establish engagement in compensable overtime work) (citing *Bull*, 68 Fed. Cl. at 217).

## II.  Galloway's Overtime was not Suffered or Permitted

Though somewhat redundant, compensable work under the FLSA includes only work that is suffered or permitted by the employer. 29 U.S.C. § 203(g). This statutory provision is like the second and third prongs of the *Bull* test. 68 Fed. Cl. at 223–224 (requiring employer to have actual or constructive knowledge by the employer, and control or require the overtime activity).

Courts are not free to disregard statutory language; the "language of the statute" is the starting point for any issue involving its application. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Each word in the statute must be given effect when possible. *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). "[C]ourts must presume that a legislature says in a statute

---

[9] The only evidence offered that this work was for the benefit of the employer are Galloway's uncorroborated time sheets which describe neither the nature of the work nor give any indication as to whether the hours logged were actually "work" as a matter of law. *See Bull*, 68 Fed. Cl. at 222–25.

8

what it means and means in a statute what it says there." *Barnhart,* 534 U.S. at 461–62 (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). Here, the language of the FLSA makes clear that only the work suffered or permitted by the employer is compensable.

The record here is unassailable: Galloway did not notify his employer of any work performed outside of his normal daily hours nor was there any reasonable basis from which his employer could have deduced that Galloway was working overtime, much less evidence that the employer was controlling or requiring those after-hours efforts. For these reasons, Galloway's claim fails both the requirements of *Bull* and of the FLSA.

### III.   Galloway as an "Exempt" Employee

As alternative grounds for summary judgement, the United States submits that Galloway was an "exempt employee" under the FLSA thus not entitled to overtime compensation. (*See* Def.'s Mot. at 20 (citing 29 U.S.C. § 213(a); 5 C.F.R. § 551.104)). The United States bears the burden of proving by "clear and convincing evidence that an employee meets the criteria for an FLSA exemption." *Astor v. United States,* 79 Fed. Cl. 303, 308 (2007). The United States' alternative argument has not carried this burden. An entry within Galloway's employment records is not enough, standing alone, to warrant summary judgement. *See Berg v. Newman,* 982 F.2d 500, 503 (Fed. Cir. 1992) (finding conclusory statements from Air Force classifiers insufficient evidence on which to grant summary judgment).

### Conclusion

Because Galloway cannot sustain his burden of establishing that the hours claimed are compensable, and because the claimed overtime work was not suffered or permitted by his Navy superiors, the United States has convincingly established that no genuine issue of material fact precludes judgement. The United States motion for summary judgment on the basis that Galloway is an "exempt" employee under FLSA is unavailing. The remaining grounds asserted by the United States need not be resolved considering the foregoing, and thus the Court makes no findings or conclusions on those issues.

Consequently, for the reasons stated above, the United States' Motion for Summary Judgment is **GRANTED IN PART**. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/
DAVID A. TAPP, Judge